UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES G. CONNELL, III,

    *Plaintiff*,

v.

UNITED STATES SOUTHERN
COMMAND,

    *Defendant.*

Civil Action No. 18-1813 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff James G. Connell, III, seeks records from Defendant United States Southern Command ("Southern Command"), a component of the Department of Defense, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. The requested records relate to a conversation between Admiral Kurt Tidd and Harvey Rishikof, the then-Convening Authority for Military Commissions, prior to Rishikof's removal from that role. In responding to Plaintiff's FOIA request, the Southern Command withheld portions of the responsive records pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6) 7(E), and 7(F). The Southern Command now moves for summary judgment, arguing that these withholdings were appropriate, and Plaintiff cross-moves for partial summary judgment, asserting that the Southern Command improperly withheld portions of the redacted records.

For the reasons explained below, the Court will **GRANT** in part and **DENY** in part the Southern Command's motion for summary judgment and will **DENY** Plaintiff's cross-motion for partial summary judgment.

## I.  BACKGROUND

Plaintiff, a defense attorney, submitted a FOIA request to the Southern Command on May 18, 2018, seeking "all documents relating to a conference call made on or about January 24, 2018 between Admiral Kurt Tidd and Harvey Rishikof," including "any notes, calendar entries, agendas, read-aheads, and all other materials relating to the call."  Dkt. 1 at 4.  Plaintiff avers that, at the time of the call, Harvey Rishikoff was "the Convening Authority for Military Commissions . . . and the Director of the Office of the Convening Authority for Military Commissions," Dkt. 18-1 at 3 (SUMF ¶ 3), and, as such, was responsible for deciding "whether or not to accept plea deals from the alleged 9/11 conspirators," *id.* at 2-3; *id.* at 4 (SUMF ¶¶ 3–4).  Plaintiff alleges that, "[s]hortly after this phone call, Mr. Rishikof and Mr. Harvey Brown, Mr. Rishikof's legal advisor, were fired by the Secretary of Defense . . . , James N. Mattis, under unusual and suspect circumstances."  *Id.* at 2.  Plaintiff further contends that "[o]ne of the topics of the phone call [was] aerial imagery of Guantanamo Bay" and that this topic of conversation was "articulated as one of the bases for the firing."  *Id.*; *see also id.* at 5–7 (SUMF ¶¶ 6, 12).

On May 24, 2018, the Southern Command issued an "interim-response" explaining that it would not be able to comply with FOIA's statutory 20-day deadline because there existed "(a) the need to search for and collect records from a facility geographically separated from this office; and/or (b) the need for consultation with one or more other agencies or [Department of Defense] components having a substantial interest in either the determination or the subject matter of the records."  Dkt. 1 at 8.  The response further noted that the Southern Command could not provide Plaintiff "an estimated completion date" at that time.  *Id.*

On August 1, 2018, Plaintiff initiated this action, Dkt. 1, and, after the Southern Command answered the complaint, Dkt. 4, the Court held a status conference.  At that

conference, held on October 2, 2018, the Southern Command represented that it would provide Plaintiff with materials responsive to his request later that month. Dkt. 5 at 1–2. The Southern Command's unclassified search for materials responsive to Plaintiff's request "yielded 1611 pages of emails and 731 pages of attachments," and its classified search identified up to "1097 pages of emails and 510 pages of attachments." Dkt. 20 at 5 (Droz Decl. ¶ 10). These documents were reviewed for responsiveness, and "132 pages of emails (containing 187 Records) and 5 attachments" were ultimately deemed responsive. *Id.* The Southern Command then performed "an initial line by line review to determine what, if any information, needed to be withheld under FOIA," after which the Southern Command's "FOIA office did a second line by line review." *Id.* Finally, the Southern Command "sent the records to the [Department of Defense] Security Classification/Declassification Review Team for a line by line classification review before final production to the Plaintiff." *Id.* (Droz Decl. ¶ 11).

On October 29, 2018, the Southern Command released its redacted response to Plaintiff. Dkt. 5 at 2. On October 16, 2019, Defendant moved for summary judgment, Dkt. 14, and on November 11, 2019, Plaintiff responded and cross-moved for summary judgment, Dkt. 18; Dkt. 19. The Southern Command then moved, with Plaintiff's consent, for leave to file a supplemental declaration from Michael Droz, the Deputy Director of the Operations Directorate for the Southern Command, and a revised *Vaughn* index. Dkt. 16; Dkt. 16-1 (Ex. A). The Southern Command explained that the supplemental declaration would "explain further the agency's search for responsive documents and expand on the rationale for redacting documents under FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), and (b)(E)." Dkt. 16 at 1. The Southern Command also noted that it had "discover[ed] that certain record numbers associated with the various FOIA exemptions [were] not entirely correct[]" in its first *Vaughn* Index, and it therefore

3

sought leave to replace the index. *Id.* at 1–2. The Southern Command "incorporate[d] by reference the 'Supplemental Droz Declaration' and 'Revised *Vaughn* Index' in support of its [earlier-filed] motion for summary judgment" and represented that "[t]he legal principles supporting Defendant's invoked FOIA exemptions, as argued in the motion for summary judgment, remain[ed] unchanged." *Id.* at 2. The Court granted Defendant's motion. Minute Order (Nov. 12, 2020). Plaintiff cross-moved for summary judgment on November 11, 2019. Dkt. 19. Defendant responded to that cross-motion and supported its cross-motion with the Declaration of Commander Delicia Gonzales Zimmerman of Southern Command. Dkt. 23; Dkt. 23-1. Plaintiff has not filed a reply in support of his cross-motion for summary judgment.

## II.  LEGAL STANDARD

The Freedom of Information Act is premised on the notion that "an informed citizenry" is "vital to the functioning of a democratic society [and] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Act embodies a "general philosophy of full agency disclosure." *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976)). The law, accordingly, requires that agencies produce responsive records unless those records fall within one of nine exclusive statutory exemptions. *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); .*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56(a), the moving party bears the burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  In a FOIA action, the agency may meet its burden by submitting declarations that are "relatively detailed and non-conclusory."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted), and an index of the information withheld, *see Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).

To prevail on summary judgment, an agency that has withheld records must offer supporting declarations and exhibits that "describe the requested documents and 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by agency bad faith.'"  *Pronin v. Fed. Bureau of Prisons*, No. 17-1807 (TJK), 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); *see also Vaughn*, 484 F.2d at 827–28.  The Court will grant summary judgment based on those declarations only if they "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding."  *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987).

### III.  ANALYSIS

The Southern Command moves for summary judgment with respect to its withholdings pursuant to Exemptions (b)(1), (b)(3), (b)(5), (b)(6), 7(E), and 7(F).  Dkt. 14.  Plaintiff, in turn, "does not challenge [the] redactions under Exemption[s] (b)(1), (b)(5), 7(E), and 7(F).  Dkt. 18-1 at 9.  The Court will, accordingly, enter partial summary judgment in favor of the Southern Command with respect to the undisputed withholdings.

This, then, leaves two disputed groups of withholdings: (1) those made pursuant to FOIA Exemption (b)(3) and 10 U.S.C. § 130b and (2) those made pursuant to FOIA Exemption (b)(6). The Court will consider these withholdings in turn.

**A.     Exemption (b)(3)**

The Southern Command argues that it properly redacted personal identifying information from 23 records pursuant to Exemption (b)(3) and 10 U.S.C. § 130b. Dkt. 20 at 6–7 (Droz Decl. ¶ 15).[1]  Plaintiff offers no argument regarding these withholdings but simply asserts (without explanation) that the Southern Command "improperly withheld [information] in accordance with 10 U.S.C. § 130(b)." Dkt. 18-1 at 1.  Because the legal sufficiency of an opponent's position is not so easily conceded on summary judgment, *see Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505–08 (D.C. Cir. 2016), the Court will reach the merits of the Southern Command's argument.

FOIA Exemption (b)(3) permits an agency to withhold records that are "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld; and . . . if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).  Here, the Southern Command relies on 10 U.S.C. § 130b(a)(1), which provides that, "notwithstanding [the FOIA]," the Secretary of Defense may "authorize to be withheld from disclosure to the public personally identifying information regarding (1) any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely

---

[1] The redacted records are documents 21, 123, 125, 130, 131, 132, 137, 138, 140, 142, 143, 144, 153, 157, 158, 162, 163, 166, 167, 170, 171, 174, and 175.  *See* Dkt. 20 at 6-7 (Droz Decl. ¶ 15).

6

deployable unit." The statute defines "personally identifying information" to mean "the person's name, rank, duty address, and official title and information regarding the person's pay." *Id.* § 130b(c)(1). It defines "overseas unit" to mean "a unit that is located outside the United States and its territories." *Id. §* 130b(c)(3).

Consistent with other decisions, the Court concludes that 10 U.S.C. § 130b qualifies as "an [E]xemption 3 statute." *Hall v. CIA*, 881 F. Supp. 2d 38, 66 (D.D.C. 2012); *see also Judicial Watch, Inc. v. U.S. Dep't of Def.*, 963 F. Supp. 2d 6, 11–12 (D.D.C. 2013); *Hiken v. Dep't of Def.*, 521 F. Supp. 2d 1047, 1062 (N.D. Cal. 2007). The statute was enacted before 2009 (*i.e.*, when the OPEN FOIA Act imposed the requirement that Exemption 3 statutes expressly reference Exemption 3), and, although discretionary, it "refers to particular types of matters to be withheld," 5 U.S.C. § 552(b)(3), *i.e.*, "the person's name, rank, duty address, and official title and information regarding the person's pay," 10 U.S.C. § 130b(c)(1). Even beyond this, moreover, 10 U.S.C. § 130b expressly overrides any contrary obligation imposed on the Department of Defense by FOIA by granting the Secretary discretion to withhold personally identifying information "notwithstanding section 552 of title 5." 10 U.S.C. § 130b(a). "[O]nce a statue is determined to fall within exemption 3, the only question is whether 'the withheld material falls within the statute.'" *Hall*, 881 F. Supp. 2d at 66 (quoting *Larson*, 565 F.3d 857 (D.C. Cir. 2009)).

Here, the Southern Command has established that it was authorized to redact the names of individuals assigned to the unit in Guantanamo Bay. Droz attests that the Southern Command withheld "personally identifying information of personnel assigned to JTF-GTMO, an overseas unit located in Guantanamo Bay, Cuba" and that, "[f]or force protection reasons, the U.S. government wants to protect the names of personnel deployed to overseas units from public

disclosure." Dkt. 20 at 6–7 (Droz Decl. ¶ 15). Plaintiff has failed to offer any factual basis to believe that the names of these individuals were improperly redacted pursuant to 10 U.S.C. § 130b.

The Court will, accordingly, grant summary judgment in favor of the Southern Command with respect to the redaction of personally identifying information from the twenty-three records at issue.

**B.     Exemption (b)(6)**

The Southern Command further argues that its redaction of "all personal information of junior personnel contain[ed] in all 183 responsive records" was proper under FOIA Exemption (b)(6). Dkt. 14-1 at 7; *see also* Dkt. 20 at 9–10 (Droz Decl. ¶ 20). Plaintiff responds that he seeks only the release of "names and duty positions" of these individuals; that Defendant has not established that the personnel whose information was redacted were, in fact, "junior," Dkt. 18-1 at 10, 12; and that their privacy interest in their names is outweighed by the public's interest in disclosure.

Under Exemption (b)(6), an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To decide whether this exemption applies, a court must first determine "whether the information requested 'applies to a particular individual.'" *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 513 (D.D.C. 2015) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc)); *Ludlam v. U.S. Peace Corps*, 934 F. Supp. 2d 174, 184 (D.D.C. 2013) ("Exemption 6 allows an agency to withhold personal identifying information, such as 'place of birth, date of birth . . . employment history, and comparable data.'" (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982))). The court must

then consider whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest," and, "[i]f no significant privacy interest is implicated . . . , FOIA demands disclosure." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). Finally, if a substantial privacy interest is implicated, the court must decide "whether disclosure 'would constitute a clearly unwarranted privacy invasion.'" *Canning*, 134 F. Supp. 3d at 513 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)). That determination involves "balanc[ing] the individual privacy interest against 'the citizens' right to be informed about what their government is up to.'" *Id.* (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007)). "Exemption 6's requirement that disclosure be 'clearly unwarranted' instructs [courts] to 'tilt the balance (of disclosure interests against privacy interest) in favor of disclosure.'" *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quoting *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982)).

Government employees often have a substantial interest in maintaining the privacy of their names and other personal information. *See Cause of Action Inst. v. U.S. Dep't of the Army*, No. 16-1020 (RDM), 2019 WL 4750213, at *9 (D.D.C. Sept. 29, 2019); *see also Shapiro v. Dep't of Justice*, 34 F. Supp. 3d 89, 96–97 (D.D.C. 2014) (FBI agents had privacy interest in their "names and/or identifying information"); *Ludlam*, 934 F. Supp. 2d at 187 (noting that Peace Corps staff's privacy interest in the withheld information was "modest" where it did not "contain names or any other personal details"). But the public interest in knowing the identity of the employee may, at times, outweigh that privacy interest, particularly when the government employee is a "high-level officer." *Stern v. FBI*, 737 F.2d 84, 91–94 (D.C. Cir. 1984) (affirming the withholding of "the names of the two lower-level employees" but requiring the disclosure of "the name of the Special Agent in Charge"); *see also id.* at 92 ("[W]e agree that the level of

responsibility held by a federal employee . . . [is an] appropriate consideration[] for determining the extent of the public's interest in knowing [his] identity.").

Applying these principles here, the Court first concludes that the withheld "names, email addresses, phone numbers, or fax numbers of junior personnel," Dkt. 20 at 10 (Droz Decl. ¶ 20), are "similar files" to the "personnel and medical files" that are explicitly referenced in Exemption 6.  5 U.S.C. § 552(b)(6); *see also Edelman v. SEC*, 239 F. Supp. 3d 45, 54–55 (D.D.C. 2017).  Second, the individuals at issue here have more than a *de minimis* privacy interest in their names and other personal information.  *See Cause of Action Inst.*, 2019 WL 4750213, at *9.  Decision from this district have repeatedly recognized that government employees possess some privacy interest even in just their names.  *See*, *e.g.*, *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 257 (D.D.C. 2017); *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 56, 84 (D.D.C. 2016).  And that interest extends to the present context.  Indeed, as the Droz declaration explains, the "[p]ersonnel associated with detention operations at Guantanamo Bay have been subject to harassments and/or threats in the past."  Dkt. 20 at 10 (Droz Decl. ¶ 20); *cf. Cause of Action Inst.*, 2019 WL 4750213, at *9 (declarant attested that Department of Defense employees "may face harassment or worse if their identities are made public").

Plaintiff once again narrows the focus of this dispute, asserting in his opposition brief and cross-motion that he is seeking only "the names of all field grade officers and above, as well as their GS equivalent."  Dkt. 18-1 at 10.  Plaintiff further explains that a "field grade officer" is "'a senior military officer in the rank of Major, Lieutenant Colonel, or Colonel.'"  *Id.* at 11 (quoting *Field Grade Officer Defined: A Senior Military Officer in the Rank of Major, Lieutenant Colonel, or Colonel*, The Field Grade Leader, http://fieldgradeleader.themilitaryleader.com/start-

10

here/ (last visited Oct. 24, 2020)). Given Plaintiff's express concession, the Court will enter summary judgment in favor of the Southern Command with respect to any Exemption 6 redactions relating to military personnel below the rank of Major, Lieutenant Colonel, or Colonel. Because Southern Command seeks to withhold only personal information identifying low-level employees, which it apparently defines as officers "at the military rank of Captain/Colonel (O-6) or below and at the rank of GS-15 or below," Dkt. 23-1 at 3 (Zimmerman Decl. ¶ 4), this leaves a relatively narrow area of dispute.

Even as narrowed in this manner, however, the Court cannot decide on the present record whether the privacy interests at issue here are outweighed by the public's interest in disclosure. The most complete explanation of the Southern Command's rationale for redacting the identities at issue is found in the Declaration of Delicia Zimmerman, who "currently oversee[s] [the Southern Command's] Freedom of Information Act . . . program." *Id.* at 1 (Zimmerman Decl. ¶ 1). Zimmerman attests that the Department of Defense has had a consistent practice "since the terrorist attacks of 9/11" of withholding personally identifying information of members of the military rank of Captain/Colonel (or the GS equivalent) or below. *Id*. at 3 (Zimmerman Decl. ¶ 4). She further explains that the practice is designed to avoid "annoyance or harassment" of these individuals "in their private lives" and that "personnel associated with detention operations at [Guantanamo Bay] have been subjected to harassment and/or threats," including threats "by known terrorists, terrorist organizations and/or terrorist sympathizers." *Id*. (Zimmerman Decl. ¶ 5).

With respect to the redactions at issue in this case, Zimmerman attests that the individuals at issue are "low[-]level employees with no policy decision making authority." *Id.* at 4 (Zimmerman Decl. ¶ 7). To be sure, a Colonel "may be [the] senior ranking officer" for "a

11

smaller command such as a brigade," but, at the Southern Command, "the senior ranking officer is a 4-star Admiral," and other officers more senior than the rank of Colonel command operations in light of the Southern Command's extensive responsibilities.  *Id.*  At the Southern Command, Zimmerman continues, "a Colonel . . . is *most likely* an action officer because *most* of the directorates are headed by General/Flag Officers . . . and Senior Executive Service . . . level civilians."  *Id.* (emphasis added).  But Zimmerman acknowledges that the Southern Command does "have some Colonel . . . and GS-15 level directorate heads."  *Id.*  Finally, Zimmerman asserts that because the "low-level individuals" whose names the Southern Command has redacted "are not the decision makers who are typically held accountable by the public, their identifies are not typically relevant or of interest to the public."  *Id.* (Zimmerman Decl. ¶ 8).

What neither the Zimmerman nor the Droz Declaration answers, however, is whether any of the redacted information reflects the identify of a "Colonel . . . or GS-15 level directorate head[]" who played a role in the events leading up to the rescission of the appointments of Gary Brown to serve at the Legal Advisor of the Convening Authority for Military Commissions and of Harvey Rishikof to serve at the Convening Authority, including whatever dispute may have occurred respecting their request for assistance in obtaining imagery of the Expeditionary Legal Complex.  *See id.* (Zimmerman Decl. ¶ 7); Dkt.18-1 at 5.  Nor does the Central Command offer a response to Plaintiff's contention that the privacy interests of any officers at the rank of Colonel (O-6) or the GS equivalent are significantly decreased because the command's "public website . . . discloses the names, positions, and biographies for a large number of O-6 and GS-15s."  Dkt. 18-1 at 11 (citing U.S. Southern Command, *SOUTHCOM Leadership and Staff*, www.southcom.mil/about/leadership (last visited Oct. 26, 2020)).  Rather, it merely asserts that "rank alone is not dispositive" but "must be viewed in context" and that "[t]he publicly available

information *may* pertain to personnel with policy decision making authority." Dkt. 24 at 5 n.3 (emphasis added). To this, the Southern Command adds that, here, "the redacted information belongs to low[-]level employees with no such responsibility." *Id.* The possibility that the publicly available information *might* not include the individuals at issue here, and the conclusory assertion that none of the redactions pertain to individuals with policymaking authority, does not satisfy the Southern Command's burden on summary judgment. Among other things, the Court needs to know whether their names are, in fact, publicly available on the Southern Command website and the basis for Zimmerman's conclusion that none held policymaking positions.

Beyond these deficiencies, the Southern Command has yet to demonstrate that the line between policymaking and non-policymaking officials is dispositive. Here, for example, Plaintiff seeks to show that the Department of Defense's rationale for the termination of Rishikof and Brown was pretextual and that they, in fact, "coordinat[ed] with the right people." Dkt. 18-1 at 13. Plaintiff is entitled to make the case that the withheld information would shed light on the workings of government. *See Norton*, 309 F.3d at 33–34 (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994)). But without more detailed declarations or a more detailed *Vaughn* Index, neither Plaintiff nor the Court can discern whether the redacted information would bear on this question. The identities of the "field grade officers," Dkt. 18-1 at 10, at issue may well be subject to protection under Exemption 6. But the Court cannot rest its decision, without more, on a declarant's unexplained and unsupported assurance that none of these officers performed any policymaking functions.

At the same time, the Court also lacks sufficient information to decide whether Plaintiff is entitled to summary judgment. For the same reasons discussed above, the Court cannot discern from the existing record whether any redacted information is likely to shed light on the

workings of government, *see Norton*, 309 F.3d at 32, and whether the disclosure would expose the individuals at issue to the risk of injury, harassment, or other harm. In short, the Court lacks the necessary information to engage in the balancing of "the private interest involved . . . against the public interest," which FOIA requires. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006).

Thus, with the exceptions noted above, the Court must deny both the Southern Command's motion for summary judgment and Plaintiff's cross-motion.[2]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, Dkt. 14, is hereby **DENIED** in part and **GRANTED** in part, and Plaintiff's cross-motion for summary judgment, Dkt. 19, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 27, 2020

---

[2] It appears from the Southern Command's brief that it redacted only the names, email addresses, phone numbers, or facsimile numbers of the personnel at issue. Dkt. 14-1 at 7. Accordingly, the Court need not address the question of segregability. *See Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). If that understanding is mistaken, the Southern Command should address the question of segregability when it renews its motion for summary judgment.